**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JACOB ADONI, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>Against<br><br>CITICORP CREDIT SERVICES, INC. (USA),<br><br>Defendant. | Case No. 21-cv-2108(JMA)(AYS) |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO CITIBANK, N.A. (SUED AS CITICORP CREDIT SERVICES, INC.)'S MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS**

Michael A. Tompkins, Esq.
Jeffrey K. Brown, Esq.
**LEEDS BROWN LAW, P.C.**
One Old Country Road, Suite 347
Carle Place, NY 11514
Telephone: (516) 873-9550
jbrown@leedsbrownlaw.com
mtompkins@leedsbrownlaw.com

*Attorneys for Plaintiff and Putative Class*

# TABLE OF CONTENTS


**I. PRELIMINARY STATEMENT** .......... **1**

**II. FACTUAL BACKGROUND** .......... **3**

**III. ARGUMENT** .......... **4**

1. Defendant Does Not Supply Evidence that Plaintiff Agreed to Arbitrate .......... 6
   a. Citicorp Has Failed to Answer the Court's Directive and Answer the Eight Fundamental Questions about Contractual Assent .......... 4
   b. Defendant Has Not Proven Assent to Arbitration related to Plaintiff's Fraud or Statutory Claims Arising Out of the Balance Protect Scheme .......... 6
   c. Citibank's Submissions Fails Under Second Circuit Law .......... 8
   d. Defendant's Grayot Declaration Does Not Demonstrate Personal Knowledge of Signature of an Arbitration Agreement by Plaintiff, Receipt of an Agreement by Plaintiff, Receipt of Specific Terms, or Any Relevant Actions Taken by Plaintiff that Manifest Assent .......... 10

2. Defendant Has Shown Only That It Possesses Policies that Allow Arbitration Related to Its Credit Agreement – Not That These Documents Require It, Govern This Dispute, or Bind Plaintiff as to the Balance Protect-based Claims .......... 14

3. The Balance Protect Dispute Is a Separate Fraud, Not Based on the Interpretation of the Citibank Agreements .......... 19

4. Exhibits 3 and 5 Are Illusory and Unenforceable Proposals for Agreement Modifications .......... 22

5. Should the Court Find Genuine Issues of Material Fact, Discovery Is Needed as to Whether Citicorp and/or Citibank and Plaintiff Assented to Arbitration .......... 24

**IV. CONCLUSION** .......... **24**

**TABLE OF AUTHORITIES**

*Abdullayeva v. Attending Homecare Services LLC*,
928 F.3d 218 (2d Cir. 2019) .......... 21

*ASM Communications Inc. v. Allen*,
656 F.Supp. 838 (S.D.N.Y. 1987) .......... 22-23

*Azriliant v. Eagle Chase Assocs.*,
213 A.D.2d 573, 624 N.Y.S.2d 238 (2d Dep't 1995) .......... 12

*Bense v. Interstate Battery Sys. of Am., Inc.*,
683 F.2d 718 (2d Cir. 1982) .......... 28

*Board of Managers of 825 West End Condominium v. Grunstein*,
192 A.D.3d 500 (1st Dep't 2021) .......... 23

*Brantley v. Republic Mortg. Ins. Co.*,
424 F.3d 392 (4th Cir. 2005) .......... 25

*Brennan v. Bally Total Fitness*,
198 F. Supp. 2d 377 (S.D.N.Y. 2002) .......... 29

*Bright-Asante v. Saks & Co., Inc.*,
242 F. Supp. 3d 229 (S.D.N.Y. 2017) .......... 21

*Cach, LLC, v. Ardsley Luncheonette, Ltd.*,
2016 NY Slip Op 32698(U), at *4 (Sup. Ct., Westchester Cnty. Mar. 6, 2016) .......... 12-13

*Campion v. Westview Apartments*,
588 N.W.2d 897 (S.D. 1999) .......... 22

*Charter Communications, Inc. v. Garfin, No. 20 CIV. 7049*
(KPF), 2021 U.S. Dist. LEXIS 33579 (S.D.N.Y. Feb. 23, 2021) .......... 29

*Chen-Oster v. Goldman, Sachs & Co.*,
449 F. Supp. 3d 216 (S.D.N.Y. 2020) .......... 20-21, 23-24

*Citibank N.A. v. Lelis*,
2014 Ill. App. Unpub. LEXIS 2477 (Ill. Ct. App., 1st Dist., Nov. 6, 2014) .......... 11

*Citibank, N.A. v. Geyer*,
2019 N.Y. Misc. LEXIS 110 (Dist. Ct., Nassau Cnty. Jan. 14, 2019) .......... 10-11, 12

*Citibank, N.A. v. Murray*,
2013 Ill. App. Unpub. LEXIS 1266 (Ill. Ct. App. 1st Dist., June 12, 2013) .......... 11, 12

*Cohen v. Kind LLC.*,
207 F. Supp. 3d 269 (S.D.N.Y. 2016) .......... 23

*Cooper v. Ruane Cunniff & Goldfarb, Inc.*,

990 F.3d 173 (2d Cir. 2021) .......... 27

*Cortes v. Cabrillo Credit Union,*
2021 U.S. Dist. LEXIS 118255 (S.D. Cal. June 24, 2021) .......... 8

*Crean v. Morgan Stanley Smith Barney, LLC*,
2023 U.S. Dist. LEXIS 10814 (D. Mass. Jan. 23, 2023) .......... 13, 20

*Crump v. MetaSource Acquisitions, LLC*,
373 F. Supp. 3d 540 (E.D. Pa. 2019) .......... 29

*Day v. Fortune Hi-Tech Mktg.*,
536 F. App'x 600 (6th Cir. 2013) .......... 28

*Diesel Props S.R.L. v. Greystone Bus. Credit II LLC, No. 07 Civ. 9580*,
2008 U.S. Dist. LEXIS 92988 at *27-28, (S.D.N.Y. Nov. 5, 2008) .......... 27

*Doe v. Princess Cruise Lines*,
65 F.3d 1204 (11th Cir. 2011) .......... 27

*Dreyfuss v. eTelecare Glob. Solutions-US, Inc.,*
249 F. App'x 551 (2d Cir. 2009) .......... passim

*Fayer v. Town of Middlebury*,
258 F.3d 117 & n.3 (2d Cir. 2001) .......... 14

*Floss v. Ryan's Family Steak Houses, Inc.*,
211 F.3d 306 (6th Cir. 2000) .......... 22-23

*Gallacher v. Citicards CBNA*,
277 A.3d 1123, 2022 Pa. Super. Unpub. LEXIS 817 (Pa. Super. Ct. Apr. 6, 2022) .......... 9, 18

*Gingras v. Think Finance, Inc.*,
922 F.3d 112 (2d Cir. 2019) .......... 3

*Green Tree Fin. Corp. v. Bazzle*,
539 U.S. 444 (2003) .......... 15

*Grodotzke v. Seaford Ave. Corp.*,
17 F. Supp. 3d 185 (E.D.N.Y. 2014) .......... 12

*Haman v. First Nat. Bank in Sioux Falls*,
115 N.W.2d 883 (S.D. 1962) .......... 16

*Hidalgo v. Amateur Athletic Union of the U.S., Inc.*,
468 F. Supp. 3d 646 (S.D.N.Y. 2020) .......... 18

*Hirsch v. Citibank, N.A.,*
542 F. App'x 35 (2d Cir. 2013) .......... 8

*In re Ore Cargo, Inc.*,

544 F.2d 80 (2d Cir. 1976) ........................................ 16

*Lik Hospitality, LLC v. Otway, No. 651382/2021*,
2022 N.Y. Misc. LEXIS 5680 (N.Y. Sup. Ct., N.Y. Cty. Aug. 31, 2022) .................... 22

*Matter of Lucas v. MBNA*,
856 N.Y.S.2d 499, 2008 NY Slip Op 50001, at *2 (Sup. Ct. Kings Cnty., Jan. 2, 2008) ......... 9

*Matter of Waldron*
61 N.Y.2d 181 (1984) ........................................ 17

*Mayfield v. Asta Funding, Inc.*,
95 F.Supp. 3d 685 (S.D.N.Y., March 30, 2015) .................... 1, 9, 13, 19, 18

*McMahon v. RMS Elects., Inc.*,
618 F. Supp. 189 (S.D.N.Y. 1985) ........................................ 21

*ME Corp. S.A. v Cohen Brothers LLC*,
292 A.D.2d 183 (1st Dep't 2002) ........................................ 22

*Medford Township School Dist. v. Schneider Buildings Americas, Inc.*,
207 A.D.2d 265 (N.J. App. Div. 2019) ........................................ 15-16

*Navillus Tile, Inc. v. Bovis Lend Lease LMB, Inc.*,
74 A.D.3d 1299 (2d Dep't 2010) ........................................ 17

*Opals on Ice Lingerie v. Bodylines Inc.*,
320 F.3d 362–72 (2d Cir. 2003) ........................................ 9, 13, 18

*Potamkin Cadillac Corp. v. B.R.I. Coverage Corp.*,
38 F.3d 627 (2d Cir. 1994) ........................................ 11-12

*Procter v. First Premier Corp.*,
2021 U.S. Dist. LEXIS 6502 (D.D.C. Jan. 13, 2021) .................... 10, 12

*Quadrant Structured Prods. Co. v. Vertin*,
23 N.Y.3d 549 (2014) ........................................ 22

*Rightnour v. Tiffany & Co.*,
239 F. Supp. 3d 744 (S.D.N.Y. 2017) ........................................ 18, 23

*Savage v. Citibank N.A., No. 14-cv-03633-BLF*,
2015 U.S. Dist. LEXIS 62343 (N.D. Cal. May 12, 2015) ....................4, 19, 20

*Schnabel v. Trilegiant Corp.*,
697 F.3d 110 (2d Cir. 2012) ........................................ 17

*Ipcon Collections LLC v. Costco Wholesale Corp.*,
698 F.3d 58 (2d Cir. 2012) ........................................ 18

*Sgouros v. TransUnion Corp.*,

817 F.3d 1029 (7th Cir. 2016) .......... 18

*Soliman v. Subway Franchisee Advert. Fund Tr., Ltd.*,
999 F.3d 828 (2d Cir. 2021) .......... 8

*Soto v. v. Am. Honda Motor Co., No. C 12-01377*
(SI), 2012 U.S. Dist. LEXIS 165988 (N.D. Cal. Nov. 20, 2012) .......... 19

*Starke v. Squaretrade, Inc.*,
913 F.3d 279 (2d Cir. 2019) .......... 1

*Tsadilas v. Providian Nat'l Bank*,
13 A.D.3d 190 (N.Y. App. Div. 2004) .......... 24

*UP v. Lloyd's London Underwriters*,
771 NW 2d 611 (S.D. 2009) .......... 9

*US Bank Trust, NA v. Moomey-Stevens*,
168 A.D. 3d 1169 (3d Dep't 2019) .......... 12

*Vaughn v. Tesla, Inc.*,
87 Cal. App. 5th 208 (Cal. Ct. App. 2023) .......... 21

Plaintiff Adoni submits this Memorandum of Law in Opposition to Defendant Citibank, N.A. (sued as Citicorp Credit Services, Inc. (USA))'s Motion to Compel Arbitration and Stay the Proceedings, as served under Your Honor's bundling rule (Rule IV(G)) on Aug. 18, 2023 and the briefing schedule set by the Court in Electronic Order, dated June 7, 2023. For the reasons detailed below, Defendant's motion should be denied in its entirety and be denied with prejudice.

## I. PRELIMINARY STATEMENT

Defendant's motion to compel arbitration asks this Court to decide as a mixed question of fact and law whether the named parties to the dispute have actually agreed to arbitrate the particular issues in the lawsuit. *See Starke v. Squaretrade, Inc.*, 913 F.3d 279, 281 n.1 (2d Cir. 2019); *Dreyfuss v. eTelecare Glob. Solutions-US, Inc.*, 349 F. App'x 551, 553-55 (2d Cir. 2009); *Mayfield v. Asta Funding, Inc.*, 95 F.Supp. 3d 685, 693 (S.D.N.Y., March 30, 2015) (Preska, J.). They did not.

First, Citicorp Credit Services, Inc. ("Citicorp") via Citibank, N.A. ("Citibank")'s submission of documents and an incomplete declaration does not comply with the Court's prior directives and are substantially flawed under controlling case law. In fact, Defendant has submitted only exemplar arbitration-related documents and a single-page signed application form (without corresponding documents from the same form). Factually, these documents demonstrate on their face a failure to produce anything related to "Balance Protector Terms & Conditions" as detailed in Exhibit 2. These documents at best speak to the separate credit card application, and they are insufficient under federal and state law. In fact, it appears that Defendant has submitted a different version of the document at issue and submitted a sworn declaration that vaguely details a process by which communications may or may not have taken place between the parties after the agreement was reached. Factually, Defendant's application comes woefully short of the legal standard and as this Court has previously direct. As such, Citicorp via Citibank has again not

submitted evidence of the eight prerequisites to arbitration identified by the Court on March 27, 2023. *See* Dkt. 23 (denying the motion to compel arbitration without prejudice and identifying eight factual categories that need to be resolved). These pieces of evidence were essential for Citicorp via Citibank to carry its burden of establishing a binding arbitration agreement and a meeting of minds between the parties.

Second, even if the Court accepts that Defendant supplied these documents and Plaintiff accepted these documents, Defendant has simply not demonstrated assent that requires arbitration under the relevant case law. The documents purported by Defendant to be controlling actually offer arbitration as an option – by using "may" instead of "shall." And importantly, those documents place that decision on filing party. *See* Ex. 4 ("If arbitration is chosen by any party…"). Thus, the underlying provision relied upon by Defendant is merely discretionary authority on the part of the aggrieved and initiating party, here Plaintiff Adoni. Because he has not invoked that discretionary authority, Defendant cannot reconfigure its prior agreement to require it.

Third, this dispute is not within the scope of the exemplar arbitration clauses provided because they do not speak to the terms of the "Balance Protector Enrollment" as a separate provision in Exhibit 2. Under Second Circuit law, a tort – particularly but not only a tort implicating a different entity or entities than the arbitration agreement's signatories – is not within the scope of an arbitration clause when the plaintiff's claim does not depend on the terms of the agreement and when the claim would exist without an agreement. A contract does not simply "sweep in" all tort claims. In fact, under Ex. 2, § 4, the Balance Protector Enrollment contains a separate set of "Balance Protector Terms & Conditions", which have not been supplied to the Court, nor any information on a process for disclosure, notice, acceptance, or assent. *See* Ex. 2, § 4. Thus, Defendant has not proven that the Balance Protect claims are governed by the provision of the

other agreement. Those are foundational to the claims here.

Fourth, the arbitration clause submitted by Citicorp is illusory and non-binding. Under its interpretation, Citicorp's retained the ability to modify the agreement in order to file any important dispute involving losses to *it* in a federal or state court rather than before arbitrators with fee-splitting. This ability makes the agreement optional on Citicorp, lacking in consideration, and illusory. Courts have found that similar clauses create unenforceable and/or unconscionable agreements.

Additionally, to the extent the Court has any concerns, then it should permit discovery to move ahead on the issues of the documents, their mailing, their receipt, and any actions undertaken by Plaintiff to manifest his assent. However, because Defendant failed to supply it have the prior directive, Defendant's motion should be denied with prejudice.

## II. FACTUAL BACKGROUND

This dispute arises out of Citicorp's distribution of an "add-on" service for Home Depot credit cards, for a transaction that initially occurs at the Home Depot cash register. Dkt. No. 1, ¶¶ 1-3, 6-7. Plaintiff was one such consumer that signed a Consumer Credit Card Application (Ex. 2, § 2) and a Balance Protector Enrollment (Ex. 2, § 4) and was subject to Defendant's improper practices. In 2015, Citicorp was named as the target of an administrative proceeding by the Consumer Financial Protection Bureau (CFPB)[1] in 2015. *See id.* ¶ 18 (citing *In the Matter of Citibank, N.A., et al*, No. 2015-CFPB0015 (July 21, 2015), Doc. 2, p. 1 ("Stipulation and Consent to the Issuance of a Consent Order"))[2].

---

[1] The Court may take judicial notice of the federal agency proceedings against Citicorp. *See Gingras v. Think Finance, Inc.*, 922 F.3d 112, 128 (2d Cir. 2019) (judicial notice of federal investigation's findings).

[2] The proceeding concerned not credit card agreements, but credit card add-on products "constituting unfair or deceptive acts or practices," as well as "deception" in the course of "acts

# III. ARGUMENT

## A. Citicorp Has Failed to Answer the Court's Directive and Answer the Eight Fundamental Questions About Contractual Assent

The Court directed Defendant to address and resolve eight critical inquiries into assent (*see* Dkt. 23, 1-2). Specifically, the Court directed the following factual issues be addressed and resolved:

1. Can Defendant provide further detail about Defendant's procedures and practices for mailing communications to Plaintiff and other card holders, including credit cards and the communications that contain the arbitration agreements at issue?
2. When was Plaintiff sent first sent a Home Depot credit card?
3. What other documents, if any, would have been provided to Plaintiff along with his original credit card?
4. Was it Defendant's policy and practice to include the first arbitration agreement in the same mailing as the original credit card?
5. What other documents, if any, would be provided to a card holder along with their first credit card?
6. Provide Plaintiff's credit card statements from 2008, 2009, and 2010.
7. Provide Plaintiff's credit card statements from 2016, 2017, and 2018.
8. Was Plaintiff ever sent a replacement credit card? If so, when did this occur and what documents, if any, would have been provided with the replacement credit card?

Dkt. 23, 1-2.

Defendant has come up woefully short of resolving the factual questions raised by the Court. Specifically, Defendant produced a one page "Consumer Credit Card Application" (Declaration of Andrew Grayot[3], Exhibit 2) with no attached terms of service (which identifies itself by Form "72100BSP 02/08") signed by Plaintiff Adoni, but then attempts to bootstrap that

---

and practices used in connection with debt collection on delinquent [Department Stores National Bank aka DSNB] credit card accounts." *In the Matter of Citibank*, supra, p. 1. DSNB appears to be related to some degree to Citicorp and/or Citibank with regard to issuing store credit cards and collect the debts thereon. *See Savage v. Citibank, N.A.*, No. 14-cv-03633, 2015 U.S. Dist. LEXIS 62343, at *10 (N.D. Cal. May 12, 2015).

[3] All exhibits attached to the Grayot Declaration are referred to as "Ex. [Number]" unless otherwise identified or described.

document to Ex. 1, which identifies itself as being "72002BSP 10/08" or Ex. 3 which identifies itself as "72000D". Thus, on the face of the three core documents submitted to the Court, Defendant is presenting entirely different forms of the "Consumer Credit Card Application" than the one that Plaintiff actually signed – by their own internal identification system.

Additionally, the Consumer Credit Card Application contains two separate signature blocks, each with their own terms and conditions. *See* Ex. 2, § 2 ("Applicant Signature Required Below"); *compare* Ex. 2, § 4 ("Balance Protector Enrollment"). Notably, Section 4 states, "You will be given additional information before you are required to pay for Balance Protector, including a copy of the Balance Protector Terms & Conditions." *Id.* at § 4. Those Balance Protector Terms & Conditions are different from those referenced in Section 2 (referred to as "Credit Card Disclosures", "Terms and Conditions of Offer" and "Citibank Card Agreement"). Defendant makes no attempt to distinguish the two sections, the different sets of terms and conditions, or provide any information related to the Balance Protector issues, which are the heart of Plaintiff's claims. *See* Doc. 1, ¶¶ 6-7.

If the Court is inclined to go beyond these facial deficiencies, further flaws exist within their submissions and purported proof of assent, including:

- It did not provide evidence that Plaintiff's initial Home Depot card(s) was received by Plaintiff in the mail along with Exhibit 3, because it is only an exemplar agreement. Instead, Mr. Grayot summarily concludes "The Card Agreement was mailed to Plaintiff when the Application was Approved…" Grayot Dec. ¶16, without providing the date and what other documents may have been included along with it – or even a copy of the cover letter or specific versions associated with Plaintiff Adoni.
- It did not demonstrate with personal knowledge what their procedures and practices were for mailing arbitration agreements and/or credit cards, including not only whether cards were included but how the envelopes were labeled and addressed and by whom they were deposited in the mail – or what additional items were supplied to Plaintiff Adoni. Grayot Dec. ¶16

- It did not prove (i) when Plaintiff was first sent a Home Depot card or (ii) what documents he actually received with his original credit card; again, only an exemplar is provided. Grayot Dec. ¶16
- It did not provide a copy of the actual documents that were included with Plaintiff's first card, or describe how such documents were collated and labeled, so as to inform the Court and Plaintiff how voluminous or verbose/buried the alleged agreements were. Instead, an exemplar agreement is attached as Exhibit 3. *See* Grayot Dec. ¶ 16.
- In providing Plaintiff's credit card statements from 2008-2010, those documents fail to demonstrate whether Citicorp or Citibank entity owned his account, how Home Depot or DSNB was portrayed, and how the Balance Protect agreement was described and billed to Plaintiff. *See* Ex. 4.
- It did not provide personal knowledge related to the 2011 Card Agreement being attached to the billing statements or Plaintiff's acceptance or assent to the same – or even a receipt of him receiving it. *See* Grayot Dec. ¶ 21.
- It did not, with respect to the delivery of replacement credit card to Plaintiff in 2013, describe what sort of arbitration clause or notice of a forthcoming arbitration agreement were delivered to Plaintiff with the replacement credit card.

*See* Grayot Dec., ¶¶ 16, 21-35.

**B. Defendant Has Not Proven Assent to Arbitration Related to Plaintiff's Fraud or Statutory Claims Arising Out of the Balance Protect Scheme**

**1. <u>Defendant Does Not Supply Evidence That Plaintiff Agreed to Arbitrate</u>**

**a. Citicorp Fails to Supply the Proper Forms**

As detailed above, Exhibits 1, 2, and 3 appear to be three entirely different forms. In fact, Citicorp via Citibank foundationally bases its argument compelling arbitration on Exhibit 3, an alleged cardholder agreement, and Exhibit 4, an alleged update to this agreement in 2011. *See* Def.'s Mem. at 3-4. Yet Exhibit 3 is not the version Plaintiff signed (by number or reference). Exhibit 2 purports to be an application page or addendum signed by Plaintiff and clearly numbered "72100BSP." *See* Grayot Dec., Ex. 2. Exhibit 3 purports to be an "exemplar" of a card agreement purported mailed to Plaintiff[4] in 2008, Grayot Dec. ¶ 16; it is clearly numbered with a different

[4] Defendant cites to Grayot Dec. at ¶ 16 for the proposition that certain documents were "mailed to Pliantiff", but the Grayot declaration does not provide a basis for such testimony

number than Exhibit 1, or "72002BSP 10/8". *See* Ex. 1, pg. 1 (bottom right corner). None of these submissions substantively purport to contain any Balance Protector Terms & Conditions, as detailed below.

Moreover, Citicorp's entire discussion of Exhibits 2 and 3 is based on the declaration of Mr. Andrew Grayot. *See* Def.'s Mem. at 3-4. This declaration does not distinguish between his allegations stated on personal knowledge and those stated upon information and belief, which may include hearsay or innuendo coming from other persons "working under [his] direction and supervision." Grayot Dec. ¶ 3. Thus, Citicorp's submission via Citibank of an exemplar or sample agreement that it claims on information and belief to be similar to what Plaintiff agreed to is insufficient as a matter of law.

**b. Citibank Fails to Supply Evidence of the Balance Protector Terms**

The Grayot declaration fails to provide details on the process related to the Balance Protector Terms of Services (Ex. 2, § 4), their mailing, their terms, their receipt, or any acts made by Plaintiff Adoni as a result of the same. In fact, Exhibit 2 is the only document actually reflecting a signature or assent of any type concerning the two separate sections that Plaintiff Adoni signed: Section 2 relating to the "Citibank Card Agreement" and Section 4 relating to "Balance Protector Enrollment." *See* Ex. 2. Defendant treats these two sections as one and the same. However, Exhibit 2 – as the purported agreement, as Defendant contends – does not. Section 2 mentions "Credit Card Disclosures", "Terms and Conditions of Offer", and "the Citibank Card Agreement." That's apparently what Mr. Grayot was attempting to identify and cobble together. However, Section 4 refers to "the Balance Protector Terms & Conditions." Ex. 2, §4. Therefore, by the express terms

---

except to cite Citibank's regular business practice. *Id.* Thus, Grayot does not provide a document or evidence to support how or why he's confident the mailings to Plaintiff actually took place.

of the only exhibit with Plaintiff's signature, those are two separate agreements and should not be treated the same. The only other reference contained in the other exhibits that Plaintiff can identify occur in the form of the "BALANCE PROTECT" charges on his statements as identified in Exhibit 4, without explanation.[5] Given Your Honor's clear directive and chance for Defendant to cure its past deficiencies (*see* Dkt. 23), Defendant's motion should be denied with prejudice for the failure to submit materials related to Balance Protector Enrollment and its Terms & Conditions.

**c. Citibank's Submissions Fails Under Second Circuit Law**

If the Court were to permit the inquiry to go further, under Second Circuit law, submission of a standard arbitration agreement or clause is not a basis to compel arbitration, where there is no evidence the plaintiff read and manifested assent to its terms. *See, e.g.*, *Hirsch v. Citibank*, *N.A.,* 542 F. App'x 35, 37 (2d Cir. 2013) (remanding the matter to trial court but noting that the trial should determine whether Citibank provided appellants with the other documents); *Dreyfuss,* 349 F. App'x at 551, 553-55 (denying motion to compel arbitration where agreement tendered by defendant was not original one signed by plaintiff); *see also Soliman v. Subway Franchisee Advert. Fund Tr., Ltd.,* 999 F.3d 828, 832, 836 (2d Cir. 2021) (although Subway's terms webpage containing arbitration clause was made available to plaintiff, there was not enough evidence plaintiff had visited page and agreed so as to be obliged to arbitrate); *Cortes v. Cabrillo Credit Union,* 2021 U.S. Dist. LEXIS 118255 (S.D. Cal. June 24, 2021) (plaintiff not bound by purported agreement where evidence was insufficient that named plaintiff actually received the cited clause and agreed to be bound to its provisions).

Cardholder agreements are not exempt from this basic contract principle. Under New York

[5] "Balance Protect" does not appear in Exhibit 3 or Exhibit 5. And it appears to solely exist in Exhibit 1 and 2 in the Application Signature blocks.

law,[6] "the credit card issuer must tender the actual provisions agreed to, including any and all amendments, and not simply a photocopy of general terms to which the credit issuer may currently demand debtors agree." *Matter of Lucas v. MBNA*, 856 N.Y.S.2d 499, 2008 NY Slip Op 50001, at *2 (Sup. Ct. Kings Cnty., Jan. 2, 2008). Similarly, under South Dakota law, Citicorp's submission of "an unsigned arbitration agreement" is insufficient without more to show "a meeting of the minds or mutual assent on all essential terms." *Gallacher v. Citicards CBNA*, 277 A.3d 1123, 2022 Pa. Super. Unpub. LEXIS 817, at *4 (Pa. Super. Ct. Apr. 6, 2022) (quoting *Melstad v. Kovac*, 2006 SD 92, 723 N.W.2d 699, 707 (S.D. 2006)). Mr. Grayot's exemplar agreements filed as exhibits and clearly identifying three separate form types, do not satisfy these requirements.

Federal courts have held that submission of a sample arbitration agreement that is said to be similar to what plaintiff signed – but is not the original signed version – is inadequate evidence to compel arbitration. *See eTelecare Glob. Solutions-U.S.,* 349 F. App'x at 551-55 (affirming denial of motion to compel arbitration where "the copy of the agreement submitted by [defendant] to the district court in support of its motion is obviously not a copy of the original agreement."); *Opals on Ice Lingerie v. Bodylines Inc.*, 320 F.3d 362, 364-65, 371–72 (2d Cir. 2003) (affirming district court's judgment that arbitration was not obligatory where: "Neither side has produced an original of the document."); *Mayfield*, 95 F.Supp. 3d at 693-95 (submission of sample arbitration agreement binding on all customers is no basis to compel arbitration where "the contracts at issue in this case" in form of "original documentation" were not provided to court); *id*. (submission of

[6] South Dakota law provides that a contract should be "'interpreted according to the law and usage of the place where it is to be performed or, if it does not indicate a place of performance, according to the law and usage of the place where it is made." South Dakota Codified Laws § 53-1-4; *see also UP v. Lloyd's London Underwriters*, 771 NW 2d 611, 618 (S.D. 2009). This contract, according to both parties, was made in New York. *See* Dkt. No. 1; Grayot Dec., ¶¶ 6-11. 16-32.

similar arbitration agreement to version said to be signed by plaintiff does not establish a binding agreement to arbitrate); *see also Procter v. First Premier Corp.*, No. 20-2162, 2021 U.S. Dist. LEXIS 6502 (D.D.C. Jan. 13, 2021).

#### d. Defendant's Grayot Declaration Does Not Demonstrate Personal Knowledge of Signature of an Arbitration Agreement by Plaintiff, Receipt of an Agreement by Plaintiff, Receipt of Specific Terms, or Any Relevant Actions Taken by Plaintiff that Manifest Assent

The Grayot Declaration is also notable not just for its merging of contract issues, but also for what he does not detail and what he does not supply to the Court. For example, in his declaration, Mr. Grayot does not say (1) that he mailed any specific document or version to Plaintiff, (2) that he has documents in his possession that demonstrate that any specific documents were mailed to Plaintiff, (3) that he is the custodian of records for whoever may have mailed such documents, (4) that he delivered any specific documents to a vendor to be mailed to Plaintiff, or (5) any details as related to the Balance Protector Terms & Conditions. *See id.*[7]

The Court should be skeptical of Mr. Grayot's knowledge[8] – not only because of his submissions and what information he omits – but also because Citicorp and/or Citibank has previously identified other individuals in other court cases, none of whom supply testimony here, including Ryan Cogan, Marianne Davis, Daniel J. Fisher, Rhonda Hedges, and Judy Delage, not Mr. Grayot. *See Citibank, N.A. v. Geyer*, 2019 NY Slip OP 50024(U), 2019 N.Y. Misc. LEXIS 110, at *1-2 (Dist. Ct., Nassau Cnty. Jan. 14, 2019) (identifying Ms. Delage custodian of records

---

[7] Similarly, Mr. Grayot testifies that certain documents "would have been attached" to Exhibit 2 at the time of signature, but he does not testify as to his basis of knowledge on the same. *See* Grayot Dec. ¶ 9.

[8] Moreover, Mr. Grayot's LinkedIn profile states that he was a "Unit Manager/AVP" and in a customer service manager role in Jacksonville at the time when Exhibits 1-2 were being created, a fact which his declaration does not mention. *See* https://www.linkedin.com/in/andrew-grayot-67a38a6/, accessed on Sept. 18, 2023.

for Citicorp as, "Vice President and Custodian of Records for Citibank, N.A."); *Citibank (South Dakota), N.A. v. Thede*, 135 Haw. 409 (Table), 2015 Haw. App. LEXIS 351, at *3 (Hawai'i Ct. App. June 30, 2015) (Mr. Cogan custodian of records for Citibank, at Citicorp); *Citibank N.A. v. Lelis*, 2014 IL App (1st) 140784-U, 2014 Ill. App. Unpub. LEXIS 2477 (Ill. Ct. App., 1st Dist., Nov. 6, 2014) (Ms. Davis custodian of records for Citicorp); *Citibank, N.A. v. Murray*, 2013 IL App (1st) 123061-U, 2013 Ill. App. Unpub. LEXIS 1266 (Ill. Ct. App. 1st Dist., June 12, 2013) (Mr. Fisher custodian of Citibank records at Citicorp); *Citibank (S.D.), N.A. v. Tate*, No. 01-09-00320-CV, 2010 Tex. App. LEXIS 9959 (Tex. Ct. App., 1st Dist. Dec. 16, 2010) (Ms. Hedges was custodian of records for both Citicorp and Citibank from 2002-2009).

Coming from someone other than a custodian of records, with knowledge of Citicorp's correspondence with the Plaintiff, the Grayot Declaration does not constitute admissible evidence. Mr. Grayot does not have knowledge or transmit information from any particular person or entity having knowledge, as to when or how Exhibits 1, 3, 4 or 5 were mailed to Plaintiff, let alone that they were opened and assented to. This makes the exhibits inadmissible. *See* Fed. R. Evid. [FRE] 901(a) ("To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is."); FRE 803(6)(A) (among other things, requiring a business record to be "made at or near the time by—or from information transmitted by—someone with knowledge"); *Potamkin Cadillac Corp. v. B.R.I. Coverage Corp.*, 38 F.3d 627, 632 (2d Cir. 1994) (to be business records under FRE 803(6), documents must be made as part of a regular practice of business or organizational activity by someone with knowledge or from information they transmitted at or near time of their making, but only if "'prepared pursuant to a business duty,'" or they are inadmissible

hearsay as to truth of matter asserted, such as documents prepared later in anticipation of or during litigation) (internal citation omitted)[9].

As other cases involving Citicorp have illustrated, the proper foundation for business records such as arbitration agreements is for the custodian of records (or someone with personal knowledge) to describe how they were prepared, when and how they were delivered to cardholders, and which Citicorp or vendor or affiliate personnel were involved with said preparation and delivery. *See, e.g., Citibank, N.A. v. Geyer,* 2019 N.Y. Misc. LEXIS 110, at *1-2; *Citibank (South Dakota), N.A. v. Thede*, 2015 Haw. App. LEXIS 351, at *3; *Citibank N.A. v. Lelis,* 2014 Ill. App. Unpub. LEXIS 2477; *Citibank, N.A. v. Murray,* 2013 Ill. App. Unpub. LEXIS 1266; *Citibank (S.D.), N.A. v. Tate,* 2010 Tex. App. LEXIS 9959. Those same principles apply in New York. *See Azriliant v. Eagle Chase Assocs.*, 213 A.D.2d 573, 575, 624 N.Y.S.2d 238 (2d Dep't 1995) (refusing to presume that mailing of option relating to agreement resulted in defendant's receipt thereof without plaintiff submitting "evidence attesting to the mailing of the … letter itself, or to the 'existence of an office procedure geared to ensure the proper addressing or mailing of [correspondence]'") (internal citation omitted, brackets added in original), *leave to appeal denied*, 86 N.Y.2d 708 (1995); *Cach, LLC, v. Ardsley Luncheonette, Ltd.*, 2016 NY Slip Op 32698(U), at

[9] *See also* FRE 902(12); *First Premier Corp.,* 2021 U.S. Dist. LEXIS 6502 (similar); *Grodotzke v. Seaford Ave. Corp.*, 17 F. Supp. 3d 185, 188 n.2 (E.D.N.Y. 2014) (excluding evidence of governing agreements on motion to dismiss "based on a failure to lay a proper evidentiary foundation" under FRE 901(a) and *Gissinger v. Yung*, No. 04 Civ. 534, 2007 WL 2228153, at *3 (E.D.N.Y. July 31, 2007)); *US Bank Trust, NA v. Moomey-Stevens*, 168 A.D. 3d 1169, 1172-73 (3d Dep't 2019) (holding that foundation was not laid for governing agreements where affidavit fails to provide any indication that affiant actually examined the original agreement); *Citibank N.A. v. Cummings*, 2022 NY Slip Op 51059 (Yonkers City Ct., Sept. 30, 2022) (holding that business records are not self-authenticating and require laying a foundation even when they are electronic, and that an allegation that the documents were delivered either via mail or electronically, without either proof of mailing or proof of a standard office procedure designed to ensure the items are properly addressed and mailed, is insufficient to establish either cause of action).

*4 (Sup. Ct., Westchester Cnty. Mar. 6, 2016) (in credit dispute, emphasizing that "plaintiff submitted an affidavit from a custodian of its records, which records included the books and records of the original creditor").

Citicorp via Citibank attempts to circumvent the requirement of personal knowledge and admissible evidence by stating that there "would be" returned undeliverable mail or opt out letters somewhere at Citibank unless Plaintiff had agreed to Citibank's mailings. Grayot Dec., ¶¶ 16-32. Courts have repeatedly rejected this tactic of suggesting what might have been or must have happened, as an end run around proving an agreement and/or proof of actual mailing or assent. *See Dreyfuss,* 349 F. App'x at 551-55; *Bodylines*, 320 F.3d at 364-65, 371–72 (non-original copy of the arbitration document); *Mayfield*, 95 F. Supp. 3d at 693-95 (sample arbitration agreement); *see also Crean v. Morgan Stanley Smith Barney, LLC,* 2023 U.S. Dist. LEXIS 10814, at *3, 6-7 (D. Mass. Jan. 23, 2023) (where defendant offered as evidence of arbitration clause its vice president's affidavit because it was "unable to locate the original .... client agreement with the purported arbitration clause," its testimony as to misplaced documents was inadmissible on defendants' motions because vice president's belief that plaintiffs "would have been required to sign a client agreement containing a mandatory arbitration clause" was not based on personal perception or knowledge).

Therefore, the only evidence of assent to be bound is a declaration from a non-custodian who cannot identify a single document reflecting an action taken by Plaintiff in relation to a binding arbitration clause – nor does he document any process at all for the Balance Protect Terms & Conditions. It provides no basis to conclude that Plaintiff manifested assent to arbitration in response to one of the documents Citicorp relies upon, or that he mailed in a form that was attached to a Citicorp mailing, for example, reflecting that he had read and understood the new terms and

conditions.

**2. <u>Defendant Has Shown Only That It Possesses Policies that Allow Arbitration Related to Its Credit Agreement – Not That These Documents Require It, Govern This Dispute, or Bind Plaintiff as to the Balance Protect-based Claims</u>**

Even if the Court looks past Defendant's flawed submissions and presumes that the purported documents were mailed, received, and accepted, Defendant's arguments still fall. Namely, there are four reasons why there was no meeting of the minds as to arbitration here: (1) the use of "may" instead of "shall" in the purported arbitration agreement makes arbitration discretionary, not mandatory, (2) express acceptance of arbitration is required under Second Circuit Precedent, (3) a signatory directly linked to the arbitration provision is mandated under controlling case law, and (4) Citicorp itself is not a signatory. Each of these arguments is discussed below.

**i. The Parties "May" Utilize Arbitration via Discretionary Authority, but that Does Not Equate to Must or Shall**

First, the allegedly updated 2011 agreement (Ex. 4) and other versions supplied by Defendant not state that all disputes "shall" be arbitrated, merely that they "may" be (and that, moreover, Citibank may add, replace, or remove any provision in the agreement, and that while it will give notice of such changes, such notice is not a condition precedent to their enforceability or applicability). *See* Grayot Dec., Ex. 5 at 5. Specifically, the alleged update states: "*You or we may arbitrate* any claim," such claims being "subject to arbitration." *Id*. (emphasis in original). This is at best ambiguous. *See Fayer v. Town of Middlebury*, 258 F.3d 117, 123 & n.3 (2d Cir. 2001) (instant "arbitration clause may also be ambiguous as to whether it requires arbitration or merely permits arbitration, since it provides that 'either party may submit [a] matter for arbitration.'"). When the drafter so intends, it is easy to say that arbitration is mandatory, such as: "All disputes, claims, or controversies arising from or relating to this contract or the relationships which result

from this contract ... *shall be resolved by binding arbitration by one arbitrator selected by us with consent of you*." *Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444, 448 (2003) (emphasis added in original).

Even if Plaintiff had manifested assent to Exhibit 5, courts have held that such a reference to arbitration as an option precludes granting a motion to *compel* arbitration. *See Abdullayeva v. Attending Homecare Services LLC*, 928 F.3d 218, 224 (2d Cir. 2019). The absence of a phrase such as "shall … arbitrate" or "all claims … shall be resolved by binding arbitration" is critical.[10] In *Abdullayeva*, the Second Circuit addressed the use of the term "may" in an arbitration clause. It held that arbitration was compulsory in that case because of *another* provision in the same agreement stating that "*all* [claims under the Covered Statutes] if not resolved in the grievance procedure ... shall be submitted to final and binding arbitration." *Abdullayeva* at 224 (emphasis added in original). There is no such "shall" clause in Exhibit 2 (the one-page "Consumer Credit Card Application"), Exhibit 3, or Exhibit 5. Accordingly, arbitration is not required. *See Bright-Asante v. Saks & Co., Inc.*, 242 F. Supp. 3d 229, 241-42 (S.D.N.Y. 2017) (Ramos, J.) (arbitration not required under agreement that says parties "'may' submit an unsettled grievance to arbitration as the final step of the grievance procedure," does not list plaintiff's specific statutory claim in a list of required arbitrations, and does not have a "shall be submitted" clause like the one in

---

[10] Moreover, the updated 2011 card agreement (Ex. 5) that Citicorp claims governs this dispute removed a sentence from Exhibit 3 stating that: "Either you or we may, without the other's consent, elect mandatory binding arbitration for any claim, dispute, or controversy between you and us." Ex. 3 at 4 (emphasis added). *Compare id*., Ex. 5 at 5 ("*You or we may arbitrate* …. **If arbitration is chosen by any party, neither you nor we will have the right to litigate that Claim in court or have a jury trial on that Claim**.") (emphasis in original). Therefore, the revised language requires the other party to acquiesce to arbitration IF the party filing the dispute elects to be heard in arbitration. Under Ex. 5, the proper reading of the agreement between the parties is that the filing party has the discretion and authority to select the forum – whether court or arbitration.

*Attending Homecare Servs.*); *see also Medford Township School Dist. v. Schneider Buildings Americas, Inc.*, 207 A.D.2d 265, 271-72 (N.J. App. Div. 2019) (holding that "use of the permissive term, 'may' underscored [the parties'] intention that the arbitration provision was permissive. Further, [Defendant] drafted the agreement and, as such, to the extent there exists any ambiguity in the arbitration provision, that ambiguity should be construed against [it]."); *see generally Campion v. Westview Apartments*, 588 N.W.2d 897, 904 (S.D. 1999) (holding that "we find that ambiguities, if any, within the agreement … would be interpreted against the drafter" because" "'Ambiguities arising in a contract should be interpreted and construed against the *scrivener*.'") (emphasis added and internal citations omitted in original) (quoting *Production Credit Ass'n v. Wynne*, 474 N.W.2d 735, 740 (S.D. 1991)); *327 Realty, Inc. v. Nextel of N.Y., Inc.,* 150 A.D.2d 581, 582 (1st Dep't 2017) ("To the extent there may be an ambiguity, it is properly construed against the drafter, defendant.").

The words chosen in an arbitration clause matter and they may not be revised or ignored in compelling arbitration. In contract law, the maxim *expressio unius est exclusio alterius* [i.e., expressing one thing is the exclusion of the alternative] means that different words and phrases cannot be read to have the same effect. *Quadrant Structured Prods. Co. v. Vertin*, 23 N.Y.3d 549, 560 (2014); *In re Ore Cargo, Inc.*, 544 F.2d 80, 82 (2d Cir. 1976) (when a "sophisticated commercial lender" fails to employ phrases or constructions creating a right which are in common use, this "precludes [courts'] divining or implying such a right on the basis of the general language"); *Haman v. First Nat. Bank in Sioux Falls*, 115 N.W.2d 883, 887-88 (S.D. 1962) ("This ancient rule of 'expressio unius est exclusio alterius' applies to the construction of contracts as well as statutes.") (internal citation omitted).

The word "may" is obviously discretionary and optional, in stark contrast to "shall," which is mandatory or automatic. *See ASM Communications Inc. v. Allen*, 656 F.Supp. 838, 839 (S.D.N.Y. 1987) (recognizing that in "common usage and understanding, the word 'shall' signifies a command"); *Brown v. Douglas Sch. Dist.*, 650 N.W.2d 264, 272-73 (S.D. 2002) ("The word 'may' in this statute means that … the School is not *required* to seek [do the thing].'") (emphasis added in original); *Matter of Groseth Int'l, Inc.*, 442 N.W.2d 229, 231 (S.D. 1989) ("Ordinarily, the word 'may' in a statute is given a permissive or discretionary meaning. It is not obligatory or mandatory as is the word 'shall.'"); *cf. Cohen v. Kind LLC.*, 207 F. Supp. 3d 269, 272 (S.D.N.Y. 2016) ("use of the word 'may' means the 'award is discretionary, not automatic'") (internal citation omitted).

**ii. Express Acceptance & Assent Required**

Second, New York law requires either "express" acceptance of an arbitration clause, or that the offeree of such a clause actually "understood that acceptance of the benefit [conferred under the contract containing the clause] would be construed by the offeror as an agreement to be bound." *Schnabel v. Trilegiant Corp.,* 697 F.3d 110, 128 (2d Cir. 2012); *Matter of Waldron (Goddess),* 61 N.Y.2d 181, 184 (1984) ("It is settled that a party will not be compelled to arbitrate and, thereby, to surrender the right to resort to the courts, absent 'evidence which affirmatively establishes that the parties expressly agreed to arbitrate their disputes....' 'The agreement must be clear, explicit and unequivocal...."'); *Board of Managers of 825 West End Condominium v. Grunstein,* 192 A.D.3d 500, 500-01 (1st Dep't 2021) ("A party to an agreement will not be compelled to arbitrate, and thereby surrender the right to resort to courts, in the absence of evidence affirmatively establishing that the parties expressly agreed to arbitrate the dispute at hand."); *Navillus Tile, Inc. v. Bovis Lend Lease LMB, Inc.,* 74 A.D.3d 1299, 1302 (2d Dep't 2010) (holding that an ADR provision in a construction contract was not binding on a subcontractor who did not agree to it in "explicit" and

"unequivocal" way, even though it was technically incorporated by reference into subcontract); *Tough Mudder Inc.,* 63 Misc. 3d at 854-55 (arbitration requires proof of how "subject arbitration clause actually appeared to the user.").

**iii. Proof of Signature on Arbitration Agreement Required**

Third, proof of the plaintiff's signature on the original arbitration agreement is required in the Second Circuit. *See Ipcon Collections LLC v. Costco Wholesale Corp.,* 698 F.3d 58, 61-62 (2d Cir. 2012) (plaintiff "duly executed" multiple contracts with defendant upon "signing" them); *Etelecare Glob. Sols.-U.S.,* 349 F. App'x at 551-55; *Bodylines*, 320 F.3d at 364-65, 371–72; *Hidalgo v. Amateur Athletic Union of the U.S., Inc.,* 468 F. Supp. 3d 646, 648, 658 (S.D.N.Y. 2020) (arbitration compelled because plaintiff sued on a contract theory and submitted a declaration indicating that he checked a box agreeing to defendant's terms and conditions); *Mayfield*, 95 F. Supp. 3d at 693-95; *Rightnour v. Tiffany & Co.*, 239 F. Supp. 3d 744, 750-54 (S.D.N.Y. 2017) (holding that a "refusal to sign offer to modify terms of [an agreement] constituted a rejection and counteroffer"). As stated in Section III(B)(1)-(2), no such signed arbitration agreement has been submitted. Similarly, South Dakota law requires a signature to manifest acceptance of Citicorp agreements. *See Gallacher*, 277 A.3d 1123, 2022 Pa. Super. Unpub. LEXIS 817, at *4 (quoting *Melstad*, 723 N.W.2d at 707).

**iv. Citicorp is Not a Signatory**

Fourth, Citicorp is not a signatory to any of the agreements provided by Citibank. In its motion, Defendant substituted Citibank for Citicorp by summarily arguing Defendant Citibank, N.A. is the proper party – but make no little substantive arguments as to why. *See* Def's Memo at 1. While there is a limited exception allowing a non-signatory to compel arbitration of a claim by a signatory to an arbitration clause where the signatory plaintiff's claims are based on the terms of

the agreement other than the arbitration term, it does not apply here. It is inapplicable because fraudulent imposition of a balance protection agreement or other contract or policy ancillary to a credit card or other agreement is not a claim based on breach of the credit agreement. *See, e.g.*, *Brantley v. Republic Mortg. Ins. Co*., 424 F.3d 392, 396 (4th Cir. 2005) (holding that party to mortgage agreement containing arbitration clause was not obligated to arbitrate mortgage *insurance* dispute even though insurance was on arbitrable mortgage debt, because insurance suit was "wholly separate from any action … for breach of the underlying mortgage contract that is governed by the arbitration agreement."); *Soto v. v. Am. Honda Motor Co.*, No. C 12-01377 (SI), 2012 U.S. Dist. LEXIS 165988, at *9 (N.D. Cal. Nov. 20, 2012) (where plaintiff car buyer signed sales agreement containing arbitration clause with defendant's dealer, clause would not apply to dispute with defendant manufacturer because plaintiffs' claims, for example relating to implied warranties in marketing statements, "do not rely on any provisions of the Installment Sale Contract"). Therefore, Mr. Grayot's submissions of exemplars which do not even mention Citicorp or the Balance Protection agreement are insufficient as a basis to compel arbitration.

### 3. <u>The Balance Protect Dispute Is a Separate Fraud, Not Based on the Interpretation of the Citibank Credit Card Agreements</u>

According to the Complaint, the Balance Protect fraud is a separate tort, or in the alternative a separate contract or obligation, that is not within scope of the arbitration clause despite its apparent breadth. There is a cardholder case under South Dakota law, which defendant invokes, that is on point. The court disaggregated two agreements or disputes. The plaintiff had one Macy's card governed by an agreement with Citibank's subsidiary DNSB, and one Sears card from Citibank itself. *See Savage v. Citibank N.A.*, No. 14-cv-03633-BLF, 2015 U.S. Dist. LEXIS 62343, at *2-3, 10 (N.D. Cal. May 12, 2015). The defendants Citibank, DSNB, and FDS Bank argued that a provision in two Sears cards Plaintiff had with Citibank applied, stating that

arbitration applied to: "All claims relating to your account, a prior related account, or our relationship . . . including Claims regarding the application, enforceability, or interpretation of this Agreement and this arbitration provision." *Id*. at *5-6. The court held that although the three accounts related to both the plaintiff and Citibank (and the plaintiff's cell phone number), arbitration was not required under South Dakota law. *See id*. at *8-9, 11-12. It reasoned that even an "'incredibly broad' [arbitration] provision could not possibly pertain to a 'tort action arising from a completely separate' transaction," and rejected the notion that "one credit card agreement could be used to dictate the parties' 'relationship' ad infinitum, regardless of the subject matter of their future interactions." *Id*. at *9-11 (quoting *In re Jiffy Lube Int'l, Inc., Text Spam Litig.*, 847 F. Supp. 2d 1253, 1262-63 (S.D. Cal. 2012)).

In this case, Mr. Grayot does not state in his declaration that Plaintiff's Balance Protect contract with Citicorp contained an arbitration clause, only that Plaintiff agreed to be bound by a "Citibank Credit Card Agreement." Grayot Dec., ¶ 11. Further, the complaint does not rely on the terms of this agreement or even mention them. This is not a case, like some cited by Citibank, in which a cardholder attempts to avoid paying an overdue balance and wants to litigate that dispute in court despite an arbitration clause in the cardholder agreement he or she signed. Mr. Grayot does not even identify whether Citicorp or Citibank administers Balance Protect or handles the denials of claims alleged in the complaint. *See* Dkt. No. 1.

In similar cases, courts in this Circuit stated that arbitration of tort or statutory claims may not be required under a clause referring to disputes "arising from/under" or "relating to" an agreement. Courts have expressed skepticism that an arbitration clause governing a contractual employment relationship "would 'sweep in' tort claims." *Chen-Oster v. Goldman, Sachs & Co.,* 449 F. Supp. 3d 216, 252 (S.D.N.Y. 2020). Even though the clause at issue governed any dispute

arising from or relating in any way to employment or other association with Goldman Sachs or its Separation Agreements, the court was "dubious of such an expansive interpretation of the provision, …" (that would sweep in tort claims); *id.* at 230, 252. *Cf. Diesel Props S.R.L. v. Greystone Bus. Credit II LLC*, No. 07 Civ. 9580, 2008 U.S. Dist. LEXIS 92988 at *27-28, (S.D.N.Y. Nov. 5, 2008) (whether a contractual clause applies "to tort claims depends on whether resolution of the claims relates to interpretation of the contract.") (internal quotation marks omitted); *McMahon v. RMS Elects., Inc.*, 618 F. Supp. 189, 191 (S.D.N.Y. 1985) ("In this Circuit, agreements to arbitrate disputes arising from a contract do not extend to tort claims that, although factually related, are considered legally distinct from the contractual relationship between the parties."). While "relating to" is a broader phrase than "arising from," the term "relating" is qualified by what follows, in this case interpretation or violation of the terms, and "relating" does not sweep in everything occurring prior to or apart from the terms. *Vaughn v. Tesla, Inc.,* 87 Cal. App. 5th 208 (Cal. Ct. App. 2023) (although "relating to" is a broad clause in an arbitration clause, it does not extend to events occurring before plaintiff's employment with defendant); *see also Doe v. Princess Cruise Lines*, 65 F.3d 1204, 1217-20 (11th Cir. 2011). In *Doe*, the clause did not "sweep all of Doe's [tort] claims into the scope of the arbitration provision"; instead, only those that were immediately, directly, or traditionally dependent on the agreement or the status it created were arbitrable. *Id*. at 1217-21 (citing *Telecom Italia, SpA v. Wholesale Telecom Corp.*, 248 F.3d 1109, 1116 (11th Cir. 2001)). *See also* Cooper v. Ruane Cunniff & Goldfarb, Inc., 990 F.3d 173, 183 (2d Cir. 2021) ("but-for causation" between employment relationship and statutory claims is insufficient under *Doe*, because "others who were never … employees could have brought [statutory] claims identical to those stated by" plaintiff) (citing *Doe*, 657 F.3d at 1218).

Plaintiff is entitled to plead, at least in the alternative, that Exhibits 1, 3, and 5 are voided as a result of fraud and overreaching, and that he has a claim for unjust enrichment, deceptive business practices, or fraud in the absence of any valid contract with Citicorp. *See, e.g., ME Corp. S.A. v Cohen Brothers LLC,* 292 A.D.2d 183, 186 (1st Dep't 2002) (unjust enrichment properly pleaded because "whether the relationship between all parties is adequately defined by these agreements [cited by the plaintiffs] is in sharp dispute at this time."); *Lik Hospitality, LLC v. Otway*, No. 651382/2021, 2022 N.Y. Misc. LEXIS 5680, at *9 (N.Y. Sup. Ct., N.Y. Cty. Aug. 31, 2022) ("It is only where the validity or scope of the contract is in dispute that a plaintiff may plead a claim for unjust enrichment or quantum meruit in the alternative.… Stated otherwise, a plaintiff is permitted to proceed in the alternative upon a quasi-contractual theory if there were a question as to whether a valid and enforceable contract exists."). *See also* Bense v. Interstate Battery Sys. of Am., Inc., 683 F.2d 718, 721-22 (2d Cir. 1982) ("contractual forum-selection clauses will be enforced unless it clearly can be shown that enforcement 'would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or overreaching,'" such as being "hidden in a mass of unrelated verbiage").

4. **Exhibits 3 and 5 Are Illusory and Unenforceable Proposals for Agreement Modifications**

As argued by Defendants, Exhibits 2, 3, 4, and 5 reserve the right to Citibank to replace, remove, or add terms at any time; no condition precedent is placed upon this right, although there is a covenant to inform cardholders. Accordingly, these documents are illusory proposals at best, and lacking in consideration in the form of mutually binding promises. They are therefore unenforceable even had Plaintiff manifested adequate assent as to their terms. *See, e.g., Day v. Fortune Hi-Tech Mktg.,* 536 F. App'x 600, 604 (6th Cir. 2013) (finding an arbitration provision was illusory and unenforceable where party advancing it retained right to modify it); *Floss v. Ryan's*

*Family Steak Houses, Inc.*, 211 F.3d 306, 315 (6th Cir. 2000) (holding that a revocable arbitration clause is not binding on parties); *Crump v. MetaSource Acquisitions, LLC*, 373 F. Supp. 3d 540, 545-46 (E.D. Pa. 2019) (where arbitration agreement reserves right to make modifications in writing and with adequate notice, entire agreement is illusory); *Rightnour v. Tiffany & Co.*, 239 F. Supp. 3d 744, 750-54 (S.D.N.Y. 2017) (valid arbitration agreement requires consideration, and continuation of parties' relationship after plaintiff logged into defendant's online "training programs" containing arbitration clause was not enough of a basis to compel arbitration, because defendant's statement to plaintiff that she "had already accepted the Dispute Resolution Agreement" was not offer that plaintiff could accept by silence or inaction) (citing *In re Randall's Island Family Golf Ctrs., Inc.*, 261 B.R. 96, 100 (Bankr. S.D.N.Y. 2001) (Bernstein, C.J.)).

By reserving the right to modify its own obligations and promises without conditions, Citibank has illegally attempted to assert special rights withheld from Plaintiff. The Court should reject this gambit. *See Charter Communications, Inc. v. Garfin*, No. 20 CIV. 7049 (KPF), 2021 U.S. Dist. LEXIS 33579, at *26-28. (S.D.N.Y. Feb. 23, 2021) (Polk Failla, J.) (holding that arbitration clause may be substantively unconscionable unless it "'applie[d] equally' to both parties and neither 'prohibit[ed] Plaintiffs from initiating arbitration' nor 'provide[d] Defendant with special rights withheld from Plaintiffs'") (emphasis added)); *Brennan v. Bally Total Fitness*, 198 F. Supp. 2d 377, 384 (S.D.N.Y. 2002) ("Generally, arbitration agreements that bind both parties to arbitration may not be said to favor the stronger party unreasonably.") (emphasis added, cleaned up); *Chen-Oster v. Goldman, Sachs & Co.*, 449 F. Supp. 3d 216, 246 (S.D.N.Y. 2020) ("At the broadest level, the doctrine of unconscionability [in New York] 'seeks to prevent sophisticated parties with grossly unequal bargaining power from taking advantage of less sophisticated parties.'") (quoting, inter alia, *Spinelli v. National Football League*, 903 F.3d 185, 208 (2d Cir.

2018)[11].

**5. Should the Court Find Genuine Issues of Material Fact, Discovery Is Needed as to Whether Citicorp and/or Citibank and Plaintiff Assented to Arbitration**

To the extent the Court is unpersuaded that there was no assent to arbitration as argued above, the Court should properly permit discovery as to numerous factual issues that should have been addressed and resolved by Defendant's renewed motion. However, because this motion is Defendant's burden and it has previously been directed to provide clear and unequivocal proof, this motion should be denied with prejudice.

## IV. CONCLUSION

For these reasons, the Court should deny Defendant's motion to compel arbitration with prejudice.

Dated: Sept. 18, 2023
Carle Place, NY

*/s/ Michael A. Tompkins*
Michael A. Tompkins, Esq.
Jeffrey K. Brown, Esq.
**LEEDS BROWN LAW, P.C.**
One Old Country Road, Suite 347
Carle Place, NY 11514
Telephone: (516) 873-9550
jbrown@leedsbrownlaw.com
mtompkins@leedsbrownlaw.com

[11] Citibank may argue that Exhibit is not unconscionable because Plaintiff could have opted out. However, opting out would have caused him to lose his credit line or be liable under applicable law to Citibank for its attorney's fees in a collection action for his outstanding balance. This adverse consequence means that the opt out provision is insufficient to cure Citibank's ability to modify its purported agreements to include more and more onerous arbitration or forum selection clauses. *Cf. Tsadilas v. Providian Nat'l Bank,* 13 A.D.3d 190, 191 (N.Y. App. Div. 2004) (no procedural unconscionability unless plaintiff could have opted out "without any adverse consequences").