UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

For Online Publication Only

---------------------------------------------------------------------X

JACOB ADONI, on behalf of himself and all others similarly situated,

Plaintiff,

-against-

CITICORP CREDIT SERVICES, INC. (USA),

Defendant.

---------------------------------------------------------------------X

FILED
CLERK
1:01 pm, Oct 13, 2026
U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

**MEMORANDUM & ORDER**
21-cv-2108 (JMA) (AYS)

**AZRACK, United States District Judge:**

Currently pending before the Court is a renewed motion to compel arbitration filed by Defendant Citicorp Credit Services, Inc., USA ("Defendant").[1]

The Court previously denied Defendant's first motion to compel arbitration without prejudice and directed Defendant to address certain issues in a renewed motion to compel arbitration. (See ECF No. 23.) After Defendant filed a renewed motion to compel, the Court directed Defendant to further address one discrete issue concerning the declaration submitted by Andrew Grayot. Defendant subsequently submitted a revised declaration from Grayot addressing that issue.

For the reasons set forth below, Defendant's motion to compel arbitration is GRANTED and this action is stayed pending the completion of arbitration proceedings, which must proceed on an individual basis.

[1] Defendant points out that the proper defendant is Citibank, N.A., which has been erroneously sued as "Citicorp Credit Services, Inc., USA."

## I. BACKGROUND

Defendant markets, distributes, and promotes Home Depot credit cards with an "add-on" service called the Balance Protector Program. (Compl. ¶ 1.) When a customer is enrolled in the Balance Protector Program, the customer is charged $0.99 for each $100 of a cardholder's balance. (Id. ¶ 2.) According to the Complaint, the Balance Protector Program was "virtually worthless to almost all cardholders due to the inability to qualify for coverage under its terms." (Id. ¶ 3.)

The Complaint alleges that Plaintiff was signed up for the Balance Protector Program without his knowledge in 2008 and was not informed of the "limitations, eligibility restrictions, and costs of Balance Protect at the time [he was] enrolled."[2] (Id. ¶¶ 7, 40, 46.) Relatedly, Plaintiff claims that when he called Defendant about the Balance Protector Program after enrollment, he was given "conflicting and confusing information about its cost, eligibility, and what it covers." (Id. ¶ 41.)

The enrollment of consumers into the Balance Protector Program was addressed in a 2015 Consent Order between the Consumer Financial Protection Bureau ("CFPB") and Citibank, N.A. (Id. ¶ 18.) The Consent Order required Defendant to pay $700,000,000 in restitution to 9 million cardholders. (Id. ¶ 19.) As part of the settlement, cardholders who had signed up for the Balance Protector Program were supposed be refunded all fees for up to 12 months of the service. (Id. ¶ 20.) The Consent Order did not require Defendant to cancel a cardholder's enrollment, but did require Defendant to develop and implement a compliance plan to inform enrollees about various aspects of the Balance Protector Program. (Id. ¶ 23.) The Complaint alleges that Defendant engaged in deceptive, misleading, and unfair acts by not cancelling Plaintiff's enrollment and by

[2] The Complaint alleges that the Defendant used confusing "pin-pad screen sequences," "screen text" formatting, and "unclear written prompts" during the sign-up process. (Compl. ¶¶ 5, 8, 10–11.) The record before the Court, however, indicates that Plaintiff signed up for his Home Depot credit card using a paper application and not a pin pad at the cash register.

not providing clear information about the program when Plaintiff contacted Defendant about the program.

In this putative class action, the complaint alleges breach of contract, fraud, and unjust enrichment claims concerning the Balance Protector Program and also alleges that Defendant's conduct concerning the program violated N.Y. GBL § 349. (Compl. ¶¶ 56–70.)

The record before the Court consists of declarations from two employees of Citibank, Andrew Grayot and MacDara Hoade, as well as exhibits attached to those declarations. These declarations and the attached exhibits establish the following facts, which unless noted otherwise, are undisputed.

Plaintiff has filed an opposition brief, which points to alleged deficiencies in Defendant's evidence. Plaintiff, however, has not submitted any evidence in opposition to the pending motion.

Plaintiff applied for the account at issue at a Home Depot store on May 24, 2008. (Grayot Decl. ¶ 7, ECF No. 39.) In order to apply for a Home Depot-branded credit card at a Home Depot store, an applicant must go through a standardized application process. (Id. ¶ 8.) An applicant must provide his or her identification to the Home Depot store representative, who provides the customer with a hard copy of the Consumer Credit Card Application. (Id.)

Plaintiff signed the signature page for a Consumer Credit Card Application on May 24, 2008. (Id. ¶ 9; Signature Page, Grayot Decl. Ex. 2, ECF No. 39-2.) This signature page explains that, by signing the page, "I certify that I have read and agree to the CREDIT CARD DISCLOSURES and TERMS AND CONDITIONS OF OFFER, both of which are attached. I also agree to be bound by the terms and conditions of the Credit Card Agreement that will be provided to me if credit is granted." (Signature Page.)

On the same signature page, Plaintiff also signed up to enroll in the Balance Protector Program, and provided an additional signature in the section of the signature page concerning that

program. (Id.) This section of the form also states, inter alia, that "You will be given additional information before you are required to pay for Balance Protector, including a copy of the Balance Protector terms and conditions." (Id.)

Grayot's declaration includes an alleged "exemplar copy of the Credit Card Application with Credit Card Disclosures and Terms and Conditions of Offer" that purportedly accompanied the signature page signed by Plaintiff. (Grayot Decl. ¶ 8.) The alleged exemplar copy of that document states:

> **Arbitration**
>
> **The Card Agreement provides that disputes are subject to binding arbitration. Arbitration replaces the right to go to court, including the right to a jury and the right to participate in a class action or similar proceeding. Read the "Arbitration" provision of the Card Agreement carefully.**

(Grayot Decl., Ex. 1, ECF No. 39-1)[3]

Plaintiff's credit card application was subsequently approved. (Grayot Decl. ¶ 15.) According to Grayot's declaration, based on his review of Citibank's records, a card agreement was mailed to Plaintiff at the home address he had provided on the application. (Id.) As Grayot explained, it is Citibank's regular business practice to send a card agreement together with the physical credit card. (Id.) Grayot's declaration includes a copy of this card agreement (the "2008 Agreement"). (Grayot Decl., Ex. 3, ECF No. 39-3.) The 2008 Agreement states that "[t]his Card Agreement is your contract with us" and "governs the use of your card and account." (Id.) The 2008 Agreement also states that this "Agreement is binding on you unless you close your account within 30 days after receiving the card and you have not used or authorized use of the card." (Id.) The 2008 Agreement also explained that Citibank could make changes to the agreement, but that if it did so, Plaintiff could elect to opt out of those changes and no longer use the credit card. (Id.)

[3] Plaintiff disputes the applicability and relevance of this exemplar copy on various grounds that are discussed infra.

The Card Agreement contains a South Dakota choice of law clause as well as an arbitration provision, relevant excerpts of which are set out below:

> **ARBITRATION**
>
> ***PLEASE READ THIS PROVISION OF THE AGREEMENT CAREFULLY.* IT PROVIDES THAT ANY DISPUTE MAY BE RESOLVED BY BINDING ARBITRATION. ARBITRATION REPLACES THE RIGHT TO GO TO COURT, INCLUDING THE RIGHT TO A JURY AND THE RIGHT TO PARTICIPATE IN A CLASS ACTION OR SIMILAR PROCEEDING. IN ARBITRATION, A DISPUTE IS RESOLVED BY AN ARBITRATOR INSTEAD OF A JUDGE OR JURY. ARBITRATION PROCEDURES ARE SIMPLER AND MORE LIMITED THAN COURT PROCEDURES.**
>
> ***Agreement to Arbitrate:*** Either you or we may, without the other's consent, elect mandatory, binding arbitration for any claim, dispute, or controversy between you and us (called "Claims").
>
> **Claims Covered**
>
> ***What Claims are subject to arbitration?*** All Claims relating to your account, a prior related account, or our relationship are subject to arbitration, including Claims regarding the application, enforceability, or interpretation of this Agreement and this arbitration provision. All Claims are subject to arbitration, no matter what legal theory they are based on or what remedy (damages, or injunctive or declaratory relief) they seek. This includes Claims based on contract, tort (including intentional tort), fraud, agency, your or our negligence, statutory or regulatory provisions, or any other sources of law; Claims made as counterclaims, cross-claims, third-party claims, interpleaders or otherwise; and Claims made independently or with other claims. A party who initiates a proceeding in court may elect arbitration with respect to any Claim advanced in that proceeding by any other party. Claims and remedies sought as part of a class action, private attorney general or other representative action are subject to arbitration on an individual (non-class, nonrepresentative) basis, and the arbitrator may award relief only on an individual (non-class, non-representative) basis.
>
> **Whose Claims are subject to arbitration?** Not only ours and yours, but also Claims made by or against anyone connected with us or you or claiming through us or you, such as a co-applicant or authorized user of your account, an employee, agent, representative, affiliated company, predecessor or successor, heir, assignee, or trustee in bankruptcy.
>
> ****
>
> **Broadest interpretation.** Any questions about whether Claims are subject to arbitration shall be resolved by interpreting this arbitration provision in the broadest

> way the law will allow it to be enforced. This arbitration provision is governed by the Federal Arbitration Act (the "FAA").
>
> ****
>
> **How Arbitration Works**
>
> **How does a party initiate arbitration?** The party filing an arbitration must choose one of the following two arbitration firms and follow its rules and procedures for initiating and pursuing an arbitration: American Arbitration Association or National Arbitration Forum. . . .
>
> ****
>
> At any time you or we may ask an appropriate court to compel arbitration of Claims, or to stay the litigation of Claims pending arbitration, even if such Claims are part of a lawsuit, unless a trial has begun or a final judgment has been entered.

(Id. (emphasis in original).)

The record shows that Plaintiff received and used the credit card that he was sent along with the 2008 Agreement.[4] Plaintiff was subsequently sent a replacement card in 2013. (Grayot Decl. ¶ 34.)

Although the record does not include any monthly statements from 2008 through April 2011, the first monthly statement in the record from May 2011 reflects that Plaintiff had, at the time, an outstanding balance of $1,889.98. (ECF No. 39-4.) This is proof that Plaintiff both received and used the card that had previously been sent to him in 2008 along with the 2008 Agreement.

Plaintiff's May 2011 monthly statement also informed him that certain changes were being made to his credit card agreement—including to the arbitration provision—and included, on pages 5 through 8 of the statement, a notice of change in terms (the "May 2011 Agreement"). The May

[4] In addition to the affirmative evidence indicating that this May 2008 mailing and other mailings were sent by Citibank and received by Plaintiff, Grayot's declaration also explains that, pursuant to Citibank's regular business practices, any mailings that were returned as undeliverable would have been noted in the records for Plaintiff's account. (Grayot Decl. ¶¶ 16, 21, 26) There are no such notations concerning any of the mailings at issue here. (Id.)

2011 Agreement included a revised arbitration provision and stated that "[t]his Card Agreement is your contract with us." (ECF No. 39-4 at 5, 7.)[5]

The May 2011 Agreement explains that Plaintiff could opt out of the change in terms and that if he did so, he would no longer be able to use his account for purchases. (Id. at 5.) Pursuant to Citibank's regular business practices, if Plaintiff had opted out of the May 2011 Agreement, that would have been noted in the records for his account and those records contain no such notation. (Grayot Decl. ¶ 24.)

Plaintiff's June 2011 monthly statement indicates that Plaintiff paid $250 towards his outstanding balance on May 27, 2011, which is proof that Plaintiff received his May 2011 monthly statement.[6] (ECF No. 39-4 at 3.) Plaintiff's June 2011 monthly statement also indicates that he made a purchase using his credit card that same day. (Id.)

The arbitration provision in the May 2011 Agreement contains the following language, most of which is substantially similar to the language in the May 2008 Agreement.

**ARBITRATION**

> *PLEASE READ THIS PROVISION OF THE AGREEMENT CAREFULLY.*
> IT PROVIDES THAT ANY DISPUTE MAY BE RESOLVED BY BINDING ARBITRATION. ARBITRATION REPLACES THE RIGHT TO GO TO COURT, INCLUDING THE RIGHT TO A JURY AND THE RIGHT TO PARTICIPATE IN A CLASS ACTION OR SIMILAR PROCEEDING. IN ARBITRATION, A DISPUTE IS RESOLVED BY AN ARBITRATOR INSTEAD

---

[5] Unless otherwise noted, pin citations refer to the pagination stamped on the documents by the ECF filing system.

[6] In opposing Defendant's original motion to compel, Plaintiff provided a declaration in which he stated that he did not "recall" receiving the 2008 Agreement or a later card agreement that Defendant maintains it sent him in October 2016 (the "October 2016 Agreement"). (ECF No. 19-5.) Plaintiff, however, did not file any affidavit or declaration in response to Defendant's renewed motion to compel. The Court declines to consider the declaration Plaintiff only submitted in connection with Defendant's first motion to compel arbitration. Moreover, even if Plaintiff had resubmitted that declaration, the Court would still grant the motion to compel. First, while Plaintiff's declaration stated that he did not "recall" receiving the agreements from May 2008 and October 2016 that contained arbitration clauses, Plaintiff's declaration said nothing about the arbitration provision that was attached to his May 2011 monthly statement and Plaintiff has never offered any evidence concerning that agreement and arbitration provision. Second, even as to the 2008 Agreement and October 2016 Agreement, Plaintiff's statement that he did not "recall" receiving these documents would be insufficient, given all the evidence in the record, to raise a disputed issue of material fact concerning those two agreements. See Morehouse v. PayPal Inc., No. 21-CV-4012, 2022 WL 912966, at *4–5 (S.D.N.Y. Mar. 28, 2022) (granting motion to compel and explaining that plaintiff's "equivocal statement" that she did "not recall receiving" the agreement was "insufficient to rebut the presumption of receipt").

OF A JUDGE OR JURY. ARBITRATION PROCEDURES ARE SIMPLER AND MORE LIMITED THAN COURT PROCEDURES.

***Agreement to Arbitrate***: Either you or we may, without the other's consent, elect mandatory, binding arbitration for any claim, dispute, or controversy between you and us (called "Claims").

**Claims Covered**

**What Claims are subject to arbitration?** All Claims relating to your account, a prior related account, or our relationship are subject to arbitration, including Claims regarding the application, enforceability, or interpretation of this Agreement and this arbitration provision. All Claims are subject to arbitration, no matter what legal theory they are based on or what remedy (damages, or injunctive or declaratory relief) they seek. This includes Claims based on contract, tort (including intentional tort), fraud, agency, your or our negligence, statutory or regulatory provisions, or any other sources of law; Claims made as counterclaims, cross-claims, third-party claims, interpleaders or otherwise; and Claims made independently or with other claims. A party who initiates a proceeding in court may elect arbitration with respect to any Claim advanced in that proceeding by any other party. Claims and remedies sought as part of a class action, private attorney general or other representative action are subject to arbitration on an individual (non-class, non-representative) basis, and the arbitrator may award relief only on an individual (non-class, non-representative) basis.

**Whose Claims are subject to arbitration?** Not only ours and yours, but also Claims made by or against anyone connected with us or you or claiming through us or you, such as a co-applicant or authorized user of your account, an employee, agent, representative, affiliated company, predecessor or successor, heir, assignee, or trustee in bankruptcy.

****

**Broadest interpretation.** Any questions about whether Claims are subject to arbitration shall be resolved by interpreting this arbitration provision in the broadest way the law will allow it to be enforced. This arbitration provision is governed by the Federal Arbitration Act (the "FAA").

****

**What about debt collections?** We and anyone to whom we assign your debt will not initiate an arbitration proceeding to collect a debt from you unless you assert a Claim against us or our assignee. We and any assignee may seek arbitration on an individual basis of any Claim asserted by you, whether in arbitration or any proceeding, including in a proceeding to collect a debt. You may seek arbitration on an individual basis of any Claim asserted against you, including in a proceeding to collect a debt.

**How Arbitration Works**

> **How does a party initiate arbitration?** The party filing an arbitration must choose one of the following two arbitration firms and follow its rules and procedures for initiating and pursuing an arbitration: American Arbitration Association or JAMS. . . .
>
> ****
>
> At any time you or we may ask an appropriate court to compel arbitration of Claims, or to stay the litigation of Claims pending arbitration, even if such Claims are part of a lawsuit, unless a trial has begun or a final judgment has been entered.

(May 2011 Agreement, ECF No. 39-4 at 7 (emphasis in original).)[7]

According to Grayot's declaration, on or around October 7, 2016, another change in terms, which included a new card agreement (the "October 2016 Agreement") was mailed to Plaintiff. (Grayot Decl. ¶ 25.) The record includes an exemplar copy of the 2016 Card Agreement, which includes the following relevant provisions:

> **ARBITRATION**
>
> ***PLEASE READ THIS PROVISION OF THE AGREEMENT CAREFULLY.***
>
> **THIS SECTION PROVIDES THAT DISPUTES MAY BE RESOLVED BY BINDING ARBITRATION. ARBITRATION REPLACES THE RIGHT TO GO TO COURT, HAVE A JURY TRIAL OR INITIATE OR PARTICIPATE IN A CLASS ACTION. IN ARBITRATION, DISPUTES ARE RESOLVED BY AN ARBITRATOR, NOT A JUDGE OR JURY. ARBITRATION PROCEDURES ARE SIMPLER AND MORE LIMITED THAN IN COURT. THIS ARBITRATION PROVISION IS GOVERNED BY THE FEDERAL ARBITRATION ACT (FAA), AND SHALL BE INTERPRETED IN THE BROADEST WAY THE LAW WILL ALLOW.**

---

[7] The arbitration provision in the 2011 Agreement involves certain changes, including the addition of the provision about debt collections and the replacement of the National Arbitration Forum with JAMS as one of the available arbitration firms.

**Covered claims**

> • You or we may arbitrate any claim, dispute or controversy between you and us arising out of or related to your account, a previous related account or our relationship (called "Claims").
>
> **• If arbitration is chosen by any party, neither you nor we will have the right to litigate that Claim in court or have a jury trial on that Claim.**
>
> Except as stated below, all Claims are subject to arbitration, no matter what legal theory they're based on or what remedy (damages, or injunctive or declaratory relief) they seek, including Claims based on contract, tort (including intentional tort), fraud, agency, your or our negligence, statutory or regulatory provisions, or any other sources of law; Claims made as counterclaims, cross-claims, third-party claims, interpleaders or otherwise; Claims made regarding past, present, or future conduct; and Claims made independently or with other claims. This also includes Claims made by or against anyone connected with us or you or claiming through us or you, or by someone making a claim through us or you, such as a co-applicant, authorized user, employee, agent, representative or an affiliated/parent/subsidiary company.

**Arbitration limits**

> • Individual Claims filed in a small claims court are not subject to arbitration, as long as the matter stays in small claims court.
>
> • We won't initiate arbitration to collect a debt from you unless you choose to arbitrate or assert a Claim against us. If you assert a Claim against us, we can choose to arbitrate, including actions to collect a debt from you. You may arbitrate on an individual basis Claims brought against you, including Claims to collect a debt.

(October 2016 Agreement, Grayot Decl. Ex. 5, ECF No. 39-6 at 5.)

As with the other card agreements, Grayot reported that there is no notation in Citibank's records that this mailing was returned as undeliverable. (Grayot Decl. ¶ 26.)

The arbitration provisions in the 2008 Agreement, the May 2011 Agreement, and the October 2016 Agreement all contain class action waivers and require arbitration on an individual non-class basis.

## II. DISCUSSION

### A. Standard for Motion to Compel Arbitration

Under the Federal Arbitration Act (the "FAA"), "[a] written provision in . . . a contract . . . to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable." 9 U.S.C. § 2. The FAA reflects "a liberal federal policy favoring arbitration agreements." Meyer v. Uber Techs., Inc., 868 F.3d 66, 73 (2d Cir. 2017). When deciding whether an action must be arbitrated, "first, [the Court] must determine whether the parties agreed to arbitrate; second, it must determine the scope of that agreement; third, if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable . . ." JLM Indus., Inc. v. Stolt-Nielsen SA, 387 F.3d 163, 169 (2d Cir. 2004) (cleaned up).

"Courts deciding motions to compel apply a standard similar to that applicable for a motion for summary judgment." Meyer, 868 F.3d at 74. The Court must grant a motion to compel arbitration "if the pleadings, discovery materials before the Court, and any affidavits show there is no genuine issue as to any material fact and it is clear the moving party is entitled to judgment as a matter of law." Ryan v. JPMorgan Chase & Co., 924 F. Supp. 2d 559, 561–62 (S.D.N.Y. 2013) (cleaned up). A court deciding a motion to compel arbitration "considers all relevant, admissible evidence submitted by the parties" and "draws all reasonable inferences in favor of the nonmoving party." Meyer, 868 F.3d at 74 (cleaned up).

The party seeking to compel arbitration "bears an initial burden of demonstrating that an agreement to arbitrate was made." Zachman v. Hudson Valley Fed. Credit Union, 49 F.4th 95, 101–02 (2d Cir. 2022). Whether such an agreement existed is a question of applicable state contract law. Id. at 101. "Once the existence of an agreement to arbitrate is established, the burden

shifts to the party seeking to avoid arbitration to show the agreement to be inapplicable or invalid." Id. (cleaned up).

**B. The Parties' Arguments**

Defendant maintains that Plaintiff was bound by all three arbitration clauses at issue and that Plaintiff must be compelled to arbitrate his claims on an individual basis.

Plaintiff raises various challenges to the evidence offered by Defendant. Some of the challenges apply generally to the evidence offered by Defendant and are potentially relevant to each of the three arbitration agreements at issue. Other challenges are relevant to specific documents and arbitration agreements.

Plaintiff contends that the evidence offered by Defendant is insufficient to establish he was sent, received, or agreed to any of the three arbitration agreements at issue. Plaintiff also contends that even if he was sent and received these agreements, the arbitration provisions therein do not require him to arbitrate his claims based on the specific language in the provisions as well as the fact that the Balance Protector Program was subject to a separate document setting out the terms and conditions of that program. Plaintiff also maintains, inter alia, that these agreements are illusory and that he is entitled to discovery.

As explained below, none of Plaintiff's arguments are a basis to deny Defendant's motion to compel arbitration. The undisputed facts in the record establish that Plaintiff received all three of the arbitration agreements at issue and he is required to arbitrate all his claims under those arbitration provisions. Accordingly, Defendant's motion to compel must be granted.

**C. Plaintiff's General Challenges to Grayot's Declaration**

Plaintiff generally contends that Grayot's declaration is conclusory and based on inadmissible evidence. According to Plaintiff, Grayot's declaration is: (1) insufficient to trigger

the presumption of mailing; and (2) otherwise insufficient to establish that the mailings at issue were, in fact, sent to Defendant.[8]

The Court disagrees. Grayot's declaration and the attached exhibits—which are the crux of Defendant's motion—are admissible and sufficient to support the motion to compel.

Plaintiff's opposition brief criticized the fact that Grayot's declaration that was included with the renewed motion stated that it was potentially based on "information provided by persons working under my direction and supervision." (ECF No. 32-12.) However, the revised declaration Grayot subsequently provided addressed this potential issue. (See Grayot Decl., ECF No. 39; see also 9/20/2024 Order). Grayot's revised declaration explains that the information in his declaration is based on his own personal knowledge or review of Citibank's records and that none of his testimony "is based on information provided by persons working under my direction and supervision." (Grayot Decl. ¶ 1, ECF No. 39.) Grayot's revised declaration is admissible. See Kernaghan v. Forster & Garbus, LLP, No. 18-CV-0204, 2019 WL 981640, at *4 (E.D.N.Y. Feb. 25, 2019) ("[Q]ualified witnesses may make admissible statements based on their review of business records."); see also Bank of Am., N.A. v. Dexter Sales Inc., No. 19-CV-110, 2020 WL 4345005, at *3 (E.D.N.Y. July 29, 2020) ("A business executive may attest to factual matter known personally to her and formed by her review of the books and records of her business.").

Plaintiff also criticizes Grayot's declaration because, in other cases, Citibank has identified different individuals as record custodians and relied on declarations from those other individuals to: (1) establish that cited documents are authentic business records; and (2) describe how those documents were prepared and when and how they were delivered to cardholders. This challenge

[8] The Court assumes that the questions of whether Plaintiff was sent, received, and agreed to the arbitration provisions at issue are governed by New York law. See Schnabel v. Trilegiant Corp., 697 F.3d 110, 119 (2d Cir. 2012); Jackson v. Rushmore Serv. Ctr., LLC, No. 18-CV-4587, 2019 WL 4736914, at *4 (E.D.N.Y. Sept. 27, 2019). Defendant also cites South Dakota law, which the agreements all identify as the relevant applicable law. Under both New York and South Dakota law, the undisputed facts in the record establish that Plaintiff was sent, received, and agreed to all three arbitration provisions at issue.

is meritless. Grayot's position and long tenure at Citibank are sufficient to support the assertions in his declaration, including his statement that Citibank has a regular business practice of including a credit agreement along with the physical credit card. Grayot's declaration is also sufficient to establish that the documents attached to his declaration are admissible business records.

Plaintiff critiques Defendant's reliance on the fact that Citibank tracks returned mail and has no records of any of the mailings at issue being returned. That evidence, however, supports Defendant's argument that Plaintiff was sent and received the mailings at issue and, notably, is not Defendant's sole, or even most important, proof.

Plaintiff also generally criticizes Defendant's reliance on exemplar copies of the 2008 Agreement, the October 2016 Agreement, and other documents. It is, however, permissible for Defendant to rely on exemplar copies of documents where, as here, there is sufficient evidence in the record to establish that the exemplar copy at issue is a true and correct copy of the document that was provided to Plaintiff.[9] See Marcario v. Midland Credit Mgmt., Inc., No. 17-CV-414, 2017 WL 4792238, at *4 (E.D.N.Y. Oct. 23, 2017); Bakon v. Rushmore Serv. Ctr., LLC, No. 16-CV-6137, 2017 WL 2414639, at *3 (E.D.N.Y. June 2, 2017).

Plaintiff also argues that Defendant did not explicitly address each issue raised in the Court's order denying Defendant's first motion to compel and failed to provide sufficient answers to each of the questions and issues raised by the Court. Plaintiff misunderstands that order. The issues and questions raised in that order were not prerequisites that each needed to be satisfied for Defendant to prevail. Rather, these were various issues with potential relevance to the motion to compel that the Court asked Defendant to address. Based on Defendant's renewed motion and

[9] As discussed infra, although Plaintiff has raised a colorable challenge to one exemplar copy of a document from 2008 that Defendant submitted concerning the signature page and accompanying attachments, it is unnecessary for the Court to rely on that document and that challenge does not preclude the Court from granting the motion to compel.

Grayot's revised declaration, the Court concludes that Defendant's motion to compel must be granted.

The Court finds that Plaintiff received all three of the arbitration agreements at issue. Accordingly, Plaintiff is required to arbitrate and Defendant's motion to compel must be granted.

### D. Plaintiff's Challenges to the Mailing and Receipt of Specific Agreements

#### 1. The Signature Page, Attached Terms, and 2008 Agreement

Grayot's declaration includes an alleged "exemplar copy of the full Consumer Credit Card Application with Credit Card Disclosures and Terms and Conditions of Offer" that purportedly accompanied the signature page signed by Plaintiff in 2008. This exemplar copy states:

> **Arbitration**
>
> **The Card Agreement provides that disputes are subject to binding arbitration. Arbitration replaces the right to go to court, including the right to a jury and the right to participate in a class action or similar proceeding. Read the "Arbitration" provision of the Card Agreement carefully.**

(ECF No. 39-1.)

Plaintiff contends that the Court should not rely on this "exemplar copy" because it includes different document designation markings than the signature page signed by Plaintiff. The exemplar copy of the signature page is marked with "09/08" whereas the actual signature page signed by Plaintiff is marked with "02/08." Additionally, other pages of the alleged exemplar copy include markings indicating "9/30/2008" or "11/26/08."

These discrepancies appear to indicate that the signature page executed by Plaintiff is from an earlier version of this document than the exemplar copy provided by Grayot. An exemplar copy of the specific document that would have accompanied the version of the signature page executed by Plaintiff does not appear to be part of the record. Plaintiff suggests that, as such, the disclosures

and terms that were attached to the signature page he executed may have been different from those contained in the exemplar copy provided by Defendant.[10]

It is ultimately unnecessary for the Court to rely on this exemplar copy or the content of the disclosures and terms that were attached to the signature page to decide this motion because, on the signature page that Plaintiff indisputably executed, Plaintiff also explicitly agreed to be bound by the terms and conditions of the credit card agreement that would subsequently be provided to him if credit was granted. As explained below, the record establishes that Plaintiff: (1) was subsequently sent the 2008 Agreement that includes an arbitration clause; (2) received that agreement and the accompanying credit card; and (3) subsequently used that credit card, and is therefore bound by the agreement and its arbitration provision.

For the 2008 Agreement, there is undisputed evidence that: (1) Citibank had a practice of including a credit card agreement along with the physical credit card when an account was opened; (2) Plaintiff received and used his card; (3) Plaintiff had previously agreed, in writing, to be "bound by the terms and conditions of the Credit Card Agreement that will be provided to me if credit is granted," (Signature Page); and (4) this mailing was not returned to Citibank as undeliverable. This evidence is sufficient, along with the other evidence in the record, to establish that Plaintiff was sent, received, and is bound by the 2008 Agreement and the arbitration provision contained therein. See Morehouse, 2022 WL 912966, at *4–5 (granting motion to compel where defendant offered evidence that issuer had "standard practice . . . to send the Cardholder Agreement to a user along with the card itself," which the customer subsequently used, and finding that plaintiff's statement "equivocal statement" that she did "not recall receiving it" was "insufficient to rebut the presumption of receipt"); Bakon, 2017 WL 2414639, at *2 (finding that uncontested evidence that

[10] Plaintiff has not provided a declaration or affidavit stating that the disclosures and terms that were attached to his signature page differed, in any materials respects, from this exemplar copy or did not reference the arbitration provision in the card agreement.

plaintiff used the credit card and that it was "Premier's custom to direct its vendor to mail the Agreement with each new credit card when an account was opened, and that it directed its vendor to do so in this case" constituted "sufficient unrebutted evidence to entitle Rushmore to a presumption that [plaintiff] received the Agreement and agreed to its terms"); Salerno v. Credit One Bank, NA, No. 15-CV-516, 2015 WL 6554977, at *1 (W.D.N.Y. Oct. 29, 2015) (granting motion to compel where affidavits established that defendant had a policy of including copy of the cardholder agreement when mailing customers credit cards and plaintiff had previously been informed in a written solicitation that if she accepted offer for credit card she would be subject to the terms and conditions of the cardholder agreement).

Plaintiff raises various other challenges to the 2008 Agreement, contending, inter alia, that: (1) the record does not establish the precise date these documents were mailed; and (2) Defendant failed to provide all documents that were included with Plaintiff's card and has not described how those documents were collated or labeled. None of these arguments raise material factual disputes that warrant denying Defendant's motion to compel.

Plaintiff is clearly bound by the 2008 Agreement, which is sufficient on its own to compel arbitration of the complaint's claims.[11]

**2. The May 2011 Agreement and October 2016 Agreement**

For the May 2011 Agreement, Plaintiff contends that Grayot lacked personal knowledge that the May 2011 Agreement was attached to Plaintiff's billing statement and the record lacks "a receipt" that Plaintiff received the mailing. These arguments are meritless. The copy of Plaintiff's May 2011 monthly statement in the record includes Plaintiff's name, address, and account number and is not even an exemplar copy. (ECF No. 39-4 at 1–8.) The May 2011 Agreement was part of

[11] Even assuming arguendo that Plaintiff could raise factual disputes concerning the mailing and receipt of the May 2011 Agreement and October 2016 Agreement, the Court would grant the motion to compel based on the 2008 Agreement alone.

this monthly billing statement and was not a separate document that was purportedly included in this mailing. The May 2011 Agreement is specifically marked as pages 5, 6, 7, and 8 of a larger 8-page document that comprises Plaintiff's monthly billing statement. (Id.)

The absence of a "receipt" is also not fatal. The fact that Plaintiff made a payment on the outstanding balance identified in his May 2011 statement is additional proof that Plaintiff was sent and received this statement. Moreover, Plaintiff has never offered any evidence asserting that he did not receive this, or any other, monthly statement. The undisputed evidence in the record establishes that Plaintiff was sent and received the May 2011 Agreement containing an arbitration clause.

Plaintiff does not raise any specific arguments that are focused solely on the mailing and receipt of the October 2016 Agreement. Having considered all of Plaintiff's arguments, the Court concludes that the evidence is also sufficient to establish that he was sent and received the 2016 Agreement. In any event, even assuming arguendo that there were factual disputes about the October 2016 Agreement, as explained above, the record establishes that Plaintiff was sent and received both the 2008 Agreement and the May 2011 Agreement and, accordingly, would be bound to arbitrate based on both of those agreements.

**E. Plaintiff's Challenges Concerning the Language of the Arbitration Agreements and the Terms and Conditions of the Balance Protector Program**

Plaintiff also contends that, even if he received the arbitration agreements at issue, the language in those agreements do not require him to arbitrate his claims and Defendant has also failed to establish that the arbitration agreements cover the Balance Protector Program, which was subject to separate terms and conditions.

According to Plaintiff's proffered interpretation of the arbitration agreements, his participation in arbitration is voluntary and these agreements do not require a party who initiates litigation in court to arbitrate those claims. Plaintiff seizes on the term "may" in the 2008

Agreement and May 2011 Agreement as well as the fact that those agreements state that "[a] party who initiates a proceeding in court may elect arbitration with respect to any Claim advanced in that proceeding by any other party." The Court, however, is not persuaded by Plaintiff's tortured interpretation of these arbitration clauses, which selectively quotes and ignores critical provisions of those clauses. The 2008 Agreement and May 2011 Agreement both state that "[e]ither you or we <u>may</u>, <u>without the other's consent</u>, <u>elect mandatory, binding arbitration for any claim</u>, dispute, or controversy between you and us (called "Claims")." (Emphasis added.) Both agreements also state that "[a]t any time you or <u>we</u> <u>may ask an appropriate court to compel arbitration of Claims</u>, or to stay the litigation of Claims pending arbitration, <u>even if such Claims are part of a lawsuit</u>, unless a trial has begun or a final judgment has been entered." (Emphasis added.) These provisions establish that if Defendant elects arbitration of a claim, Plaintiff is bound to arbitrate that claim even if Plaintiff brought the claim at issue as part of a lawsuit and does not consent to arbitration.

Plaintiff also contends that the arbitration agreements do not cover the Balance Protector Program because the Balance Protector Program is subject to separate terms and conditions. This argument also fails. The arbitration provisions at issue each contain broad arbitration clauses. The arbitration clauses in the 2008 Agreement and May 2011 Agreement cover claims "relating to your account, a prior related account, or our relationship." Similarly, the arbitration clause in the October 2016 Agreement covers claims "arising out of or related to your account, a previous related account or our relationship." Plaintiff's claims concerning the Balance Protect Program are "claims relating" (or "related to") "our relationship." Accordingly, Plaintiff's claims concerning the Balance Protector Program fall within the scope of these broad arbitration clauses.

Additionally, the fact that the record does not include a copy of the Balance Protector Program's terms and conditions from 2008 is not fatal to Defendant's motion to compel. The

arbitration provisions at issue here are all broad and encompass Plaintiff's claims concerning the Balance Protector Program. There is no evidence in the record suggesting that the terms and conditions of the Balance Protector Program ever included any language that would have exempted such claims concerning that program from arbitration. Additionally, Defendant's reply brief included an exemplar copy of the Balance Protector Program's terms and conditions that took effect in February 2013, when, according to Defendant, a change in terms notice was sent to Plaintiff. Those terms and conditions explicitly state that they are "subject to the Card Agreement for your account, including the arbitration and applicable law provisions." (ECF No. 32-12.) Plaintiff has not denied receiving this document or asserted that he was ever sent a document containing any language that would have exempted claims concerning the Balance Protector Program from arbitration.[12]

In another related argument, Plaintiff contends that, despite the very broad language of the arbitration provisions, his claims concerning the Balance Protector Program fall outside of the scope of the "relationship" referenced in those provisions because the Balance Protector Program is allegedly a separate contract and his claims involve separate torts. This argument fails. The Balance Protector Program concerned the balance on this specific credit card and Plaintiff was billed for the Balance Protector Program on his monthly statements for this credit card. The Balance Protector Program and credit card agreements both relate to the "relationship" between

[12] The evidence in the record is sufficient to establish that Plaintiff was sent this 2013 Change in Terms. Moreover, even assuming arguendo that Defendant's evidence was insufficient to establish that Plaintiff was sent this document, the Court would still grant Defendant's motion to compel. The record establishes that Plaintiff was sent multiple card agreements with arbitration provisions, all of which encompassed Plaintiff's current claims. Absent any contrary proof, that undisputed evidence is sufficient to establish that the Complaint's claims concerning the Balance Protector Program are subject to arbitration.

Plaintiff and Defendant and the arbitration clauses also explicitly cover tort claims.[13]

In support of this argument, Plaintiff relies heavily on Savage v. Citibank N.A., No. 14-CV-03633, 2015 WL 2214229, at *1 (N.D. Cal. May 12, 2015). However, even assuming arguendo that Savage was correctly decided, Savage is easily distinguishable. Savage involved different credit cards for different retailers, only one of which included an arbitration agreement. Id. at *3. Additionally, the court in Savage stressed that while the defendant bank acted as the issuer for one of these cards, it only acted as the servicer for the credit card that did not contain an arbitration clause and there was no evidence that the plaintiff had any notice that the latter account might one day be serviced by the defendant bank. Id.

**F. Plaintiff's Other Challenges Are Also Meritless**

Plaintiff raises various other arguments, all of which are meritless.

Plaintiff contends that Defendant failed to prove that he expressly assented to the card agreements and the arbitration clauses contained therein. However, under New York law, Plaintiff—who, as explained above, was sent and received the 2008 Agreement—assented to the terms of that agreement "by activating and using her card." Morehouse, 2022 WL 912966, at *5; see also Jackson v. Rushmore Serv. Ctr., LLC, No. 18-CV-4587, 2019 WL 4736914, at *5 (E.D.N.Y. Sept. 27, 2019). She similarly assented to the May 2011 Agreement and the October 2016 Agreement by continuing to use her card after receiving those agreements. Plaintiff's insistence that New York law required her signature to be on the arbitration agreements is meritless.

---

[13] "[T]he existence of a broad agreement to arbitrate creates a presumption of arbitrability which is only overcome if it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." Holick v. Cellular Sales of New York, LLC, 802 F.3d 391, 395 (2d Cir. 2015) (citation omitted). Although the Court finds that it is not even necessary to rely on this presumption of arbitrability here, the presumption only further buttresses the Court's conclusion. Even if there were some ambiguity in the arbitration clauses, there is undoubtedly a reasonable interpretation of those clauses that covers Plaintiff's claims concerning the Balance Protector Program.

Plaintiff also contends that defendant "Citicorp" (as opposed to Citibank, N.A.) is not a signatory and, thus, cannot enforce these arbitration clauses. While Defendant points out that Plaintiff has erroneously sued Citibank, N.A. as "Citicorp," even putting that point aside, Plaintiff's argument is, in any event, defeated by the broad language in the arbitration provisions. The 2008 Agreement and May 2011 Agreement include the following provision:

> **Whose Claims are subject to arbitration?** Not only ours and yours, but also Claims made by or against anyone connected with us or you or claiming through us or you, such as a co-applicant or authorized user of your account, an employee, agent, representative, affiliated company, predecessor or successor, heir, assignee, or trustee in bankruptcy.

(ECF No. 39-3 at 1 (emphasis added); see also ECF No. 39-4 at 7.) The October 2016 Agreement contains similar language. (ECF No. 39-6 at 5 ("This also includes Claims made by or against anyone connected with us or you or claiming through us or you, or by someone making a claim through us or you, such as a co-applicant, authorized user, employee, agent, representative or an affiliated/parent/subsidiary company.").)

Plaintiff further asserts that all the agreements at issue are illusory and unconscionable because Defendant retained the right to modify these agreements. These credit card agreements are neither illusory nor unconscionable. Defendant extended Plaintiff credit pursuant to these agreements for over a decade. Additionally, each of the agreements permitted Plaintiff to opt out of changes with the caveat that opting out would preclude him from continuing to use the credit card. Plaintiff has not cited to any authority indicating that, under either New York or South Dakota law, such standard provisions permitting modification of a credit card agreement subject to certain conditions are unconscionable or render the agreement illusory.

### G. Plaintiff's Request for Discovery

Plaintiff argues, in conclusory fashion, that "Should the Court Find Genuine Issues of Material Fact, Discovery is Needed as to Whether Citicorp and/or Citibank and Plaintiff Assented

to Arbitration." (ECF No. 32-10 at 24.) For the reasons set forth above, the Court has concluded that there are no genuine issues of material fact. Accordingly, Defendant's conclusory request for discovery is denied.

### H. Arbitration Must Proceed on an Individual Basis

Defendant asserts that given the provisions in each of the arbitration clauses and the Supreme Court's decision in AT&T Mobility LLC v. Concepcion, 563 U.S. 333 (2011), arbitration must proceed on an individual basis. Plaintiff does not dispute this point. The Court orders that arbitration must proceed on an individual basis.

## III. CONCLUSION

For the reasons stated above, Defendant's motion to compel arbitration is GRANTED and this action is stayed pending the completion of the arbitration proceedings, which shall proceed on an individual basis.

The Clerk of the Court is respectfully directed to administratively close this case, without prejudice to either party moving by letter motion to reopen the case within thirty days of the conclusion of the arbitration proceedings.[14]

**SO ORDERED.**

Date October 13, 2026
Central Islip, New York

/s/ (JMA)
JOAN M. AZRACK
UNITED STATES DISTRICT JUDGE

[14] See Zimmerman v. UBS AG, 789 F. App'x 914, 915-16 (2d Cir. 2020) ("The district court's administrative closure of the case does not constitute a final decision: there is no jurisdictional significance to [a] docket entry marking [a] case as 'closed,' which we will assume was made for administrative or statistical convenience. Nor does it amount to an appealable dismissal.") (internal quotation marks and citation omitted)).